IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANTIONE L. WILLIS, | ) | |
| Plaintiff, | ) | Case No. 08 CV 01964 |
| v. | ) | |
| | ) | Honorable Edmond E. Chang |
| JOSEPH WAGNER, | ) | |
| Defendant. | ) | |

**PLAINTIFF ANTIONE L. WILLIS' MOTION FOR NEW TRIAL**

Plaintiff Antione L. Willis ("Willis"), by and through his attorneys, respectfully submits this Motion for New Trial and states as follows:

**INTRODUCTION**

As set forth further below, Willis respectfully maintains that the Court erroneously excluded material evidence and thereby deprived Willis of a fair trial. More specifically, in its Order of August 26, 2014 (Dkt. 151 at 1), this Court drastically limited the scope of "cover-up" evidence Willis could offer:

> …the proposed categories of evidence fall on either side of a dividing line. On the one hand, Willis may offer police conduct that tends to show that Wagner and Triantafillo (Wagner's partner, who was a participant in the chase and saw the shooting) themselves had some consciousness of guilt." On the other hand, Willis may not offer evidence of allegedly defective investigation by CPD officers and personnel other than Wagner and Triantafillo.

Furthermore, in its Order of August 14, 2014 (Dkt. 138), the Court limited the scope of opinions that Willis' expert, Roger A. Clark ("Clark"), could offer regarding (among other things) the conduct of CPD personnel other than Defendant Joseph Wagner ("Wagner") and his partner, James Triantafillo ("Triantafillo"), that evidenced Wagner's consciousness of guilt.

Both of the foregoing rulings are at odds with applicable law and effectively vitiated Willis' ability to present a winning case at trial. The Court's limitation of Willis' cover-up

evidence undermined his ability to demonstrate that not only Wagner and Triantafillo, but also other CPD officers and personnel engaged in an <u>incident</u> <u>specific</u> <u>cover-up</u> of Wagner's wrongdoing. Here, the Court's decision to exclude such evidence "prejudiced the moving party's substantial rights" and "seriously hindered the presentation of his case."[1] (See <u>infra</u>).

Alternatively and additionally, it is clear that the jury's verdict in favor of Wagner was also against the manifest weight of the evidence, which showed that the (rear to front) bullet trajectory was inconsistent with Wagner's testimony that Willis turned to his left and pointed a gun at Wagner and then spun back around facing northbound after being shot by Wagner.

Thus, erroneous evidentiary rulings deprived Willis of a fair trial, and the verdict was contrary to the manifest weight of the evidence. Accordingly, justice requires a new trial.

**ARGUMENT**

**I.     LEGAL STANDARDS**

The district court has the discretionary authority to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). A new trial is appropriate where "the verdict is against the clear weight of the evidence or the trial was unfair to the moving party." <u>David v. Caterpillar, Inc.</u>, 324 F.3d 851, 863 (7th Cir. 2003). "While according due respect to the findings of the jury, [the judge] should not hesitate to set aside the[] verdict and grant a new trial in any case where the ends of justice so require." <u>Charles v. Norfolk & W. Ry. Co.</u>, 188 F.2d 691, 695 (7th Cir. 1951).

---

[1] Willis also respectfully takes issue with the Court's Order of August 14, 2014 (Dkt. 139) which excluded (among other things) evidence that no latent prints were recovered from Willis' gun, that the retrieval of Willis' gun was improper, that DNA swabs from Willis' gun were not tested, that the officers' pre-shooting actions were improper and that additional shell casings were recovered from the scene. Further, this Order apparently formed the basis for the Court's "dividing line" regarding Willis' proposed categories of cover-up evidence (Dkt. 151) and the Court's ruling as to the admissibility of Clark's opinions (Dkt. 138) which are addressed herein.

2

A. <u>**Failure To Receive A Fair Trial**</u>

A new trial is warranted where an erroneous ruling has a substantial and injurious effect or influence on the determination of a jury and is inconsistent with substantial justice. <u>Bintz v. Bertrand</u>, 403 F.3d 859, 869 (7th Cir. 2005); <u>Mihailovich v. Laatsch</u>, 359 F.3d 892, 913 (7th Cir. 2004). In the context of evidentiary rulings, error exists where the exclusion of evidence prejudiced the moving party's substantial rights or seriously hindered the presentation of his case. <u>Ellis v. City of Chicago</u>, 667 F.2d 606, 611 (7th Cir. 1981). Erroneously excluded evidence is a sufficient basis for a new trial where "a significant chance exists that [it] affected the outcome of the trial." <u>Shick v. Ill. Dept. of Human Servs.</u>, 307 F.3d 605, 611 (7th Cir. 2002) (citing <u>Hasham v. Calif. State Bd. of Equalization</u>, 200 F.3d 1035, 1048 (7th Cir. 2000)).

B. <u>**Verdict Against The Clear Weight Of The Evidence**</u>

The district court may grant a new trial if, "'after evaluating the evidence, [it] is of the opinion that the verdict is against the manifest weight of the evidence.'" <u>Moffett v. Sandoval</u>, 2012 WL 2526624, at *2 (N.D. Ill. June 28, 2012) (quoting <u>Mejia v. Cook Cnty., Ill.</u>, 650 F.3d 631, 633 (7th Cir. 2011)). "The district court has the power to get a general sense of the weight of the evidence, assessing the credibility of the witnesses and the comparative strength of the facts put forth at trial." <u>Mejia</u>, 650 F.3d at 633. The district court may also strike a piece of evidence from its weighing process if reasonable persons could not believe it because it "contradicts indisputable physical facts or laws." <u>Id</u>. A verdict is against the manifest weight of the evidence if "another outcome is obviously correct and the verdict is clearly unsupported by the evidence." <u>Moffett</u>, 2012 WL 2526624, at *2. (internal quotations and citation omitted).

## II. THE COURT'S EXCLUSION OF MATERIAL EVIDENCE DEPRIVED WILLIS OF A FAIR TRIAL.

### A. The Court Erroneously Limited Willis' Cover-Up Evidence

The Court required Willis to submit a statement describing his "cover-up" theory and categories of evidence that he intends to offer to show that law-enforcement officers and personnel attempted to cover-up Wagner's allegedly wrongful conduct. (Dkt. 142.) As noted above, the Court then ruled on that theory and related evidence by establishing a "dividing line":

> As discussed at the conference, the proposed categories of evidence fall on either side of a dividing line. On the one hand, Willis may offer police conduct that tends to show that Wagner and Triantafillo (Wagner's partner, who was a participant in the chase and saw the shooting) themselves had some consciousness of guilt. On the other hand, Willis may not offer evidence of allegedly defective investigation by CPD officers and personnel other than Wagner and Triantafillo. In order for those other individuals' actions to be relevant to Wagner's alleged use of excessive force, Willis would need to have identified some additional link between Wagner's misconduct and these other individuals' knowledge of it. Without having seen the shooting, and without evidence that Wagner admitted wrongdoing to them or asked them to engage in some type of cover-up, their conduct can only be evidence of CPD's alleged general culture of excessive force—a theory of relevancy which the Court has already rejected (there is no Monell claim in this case). (Dkt. 151 at 1.)

The Court's conclusions as to a "dividing line" are contrary to applicable law in this district.[2] As noted in Willis' Response to Wagner's Motion in Limine No. 3 (Dkt. 130 at 5-6), courts in this district have routinely held that a § 1983 plaintiff may present evidence that the

---

[2] The applicable law in this district was cited in footnote two of Willis' Statement Regarding Cover-Up Evidence (the "Statement"). (Dkt. 145 at 2.) In each of these cases, the existence or absence of a Monell claim was not a consideration in the court's decision to allow the plaintiff to introduce evidence of a cover-up by the officers involved in the incident at issue. See Ford v. Bell, No. 09 C 6851, 2012 WL 1416456 (N.D. Ill. Apr. 24, 2012); Ratliff v. City of Chicago, No. 10 C 739, 2012 WL 5845551 (N.D. Ill. Nov. 19, 2012); Betts v. City of Chicago, 784 F. Supp. 2d 1020 (N.D. Ill. 2011); Bruce v. City of Chicago, No. 09 C 4837, 2011 WL 3471074 (N.D. Ill. Jul. 29, 2011); Hill v. City of Chicago, No. 06 C 6772, 2011 WL 3205304 (N.D. Ill. Jul. 28, 2011); Christmas, et al. v. City of Chicago, 691 F. Supp. 2d 811, 819 (N.D. Ill. 2010); Moore v. City of Chicago, No. 02 C 5130, 2008 WL 4549137 (N.D. Ill. Apr. 15, 2008); Townsend v. Beyna, 287 F. Supp. 2d 868 (N.D. Ill. 2003); Harrington v. City of Council Bluffs, Iowa, 902 F. Supp. 2d 1195 (S.D. Iowa 2012).

defendant was attempting to cover up the allegedly wrongful conduct, or that he or other officers are biased in favor of one another. See e.g., Christmas, 691 F. Supp. 2d at 819 (plaintiffs in § 1983 cases may introduce evidence that the officers involved "adhered to a 'code of silence' regarding the alleged violation of the plaintiffs' constitutional rights," even if they may not introduce generalized evidence of such a code) (citation omitted); Ratliff v. City of Chicago, No. 10 C 739, 2012 WL 5845551, at 4 (N.D. Ill. Nov. 19, 2012) ("Plaintiff may present evidence that Defendant Officers are attempting to cover up the (allegedly) wrongful conduct arising from the incidents in this case or otherwise are biased toward one another"); Ford v. Bell, No. 09 C 6851, 2012 WL 1416456, at *4 (N.D. Ill. Apr. 24, 2012) (allowing plaintiff to develop the "theme" that a code of silence existed among particular officers in a particular incident).

The case law contains no requirement that a § 1983 plaintiff "would need to have identified some additional link between [the defendant's] misconduct and these other individuals' knowledge of it," as the Court held. (Dkt. 151 at 1.) Rather, it permitted incident specific evidence of the officers' cover-up efforts and bias towards each other, under the particular circumstances of each case. As reflected by Plaintiff's Statement, all of Willis' cover-up evidence was incident specific and, therefore, should have been admitted into evidence.

This conclusion is also supported by the additional case law cited in Willis' Response to Wagner's Motion in Limine No. 3, allowing plaintiff to develop the "theme" that a code of silence existed among particular officers in a particular incident, including Bruce v. City of Chicago, No. 09 C 4837, 2011 WL 3471074, at *4 (N.D. Ill. July 29, 2011) (same); Hill v. City of Chicago, No. 06 C 6772, 2011 WL 3205304, at *5 (N.D. Ill. July 28, 2011) (same); Moore v. City of Chicago, No. 02 C 5130, 2008 WL 4549137, at *6 (N.D. Ill. Apr. 15, 2008) (same). See also Harrington v. City of Council Bluffs, Iowa, 902 F. Supp. 2d 1195, 1206 (S.D. Iowa 2012);

5

Betts v. City of Chicago, 784 F. Supp. 2d 1020, 1028-29 (N.D. Ill. 2011); Townsend v. Benya, 287 F. Supp. 2d 868, 876 (N.D. Ill. 2003). See generally Seventh Circuit Pattern Jury Instruction (Civil) 1.13 (jurors should consider "any interest, bias, or prejudice the witness may have").[3] Further, as Judge Gottschall stated in Richman v. Burgeson, "[t]he plaintiff has a right to present evidence on a cover-up as it is relevant to the defendants' credibility and whether this was asserted in the pleadings is irrelevant." See 2008 WL 2567132, at *8 (N.D. Ill. June 24, 2008).

Again, as Judge Manning held in Christmas, § 1983 plaintiffs may introduce evidence that the officers involved "adhered to a 'code of silence'" even if they may not introduce generalized evidence of such a code. 691 F. Supp. 2d at 819.

Here, Willis was seeking to introduce evidence that the officers involved "adhered to a 'code of silence' regarding the alleged violation of the [plaintiff's] constitutional rights," rather than "generalized evidence of such a code." Clearly, CPD officers and personnel other than Wagner and Triantafillo could have knowledge of Wagner's wrongdoing and engaged in a cover-up, regardless of whether they had seen the shooting and regardless of whether Wagner admitted wrongdoing to them or asked them to engage in a cover-up. Moreover, to require Willis to present direct evidence that Wagner admitted wrongdoing or asked other individuals to engage in a cover-up creates an unworkable standard in situations like Willis' for multiple reasons. First, the likelihood of Willis discovering such direct evidence is very remote, especially since the person(s) providing such testimony or evidence would be opening him or herself up to potential liability for either participating in or staying silent about the cover-up that subsequently occurred. Second, it deprives the jury of circumstantial evidence that is undoubtedly relevant to the issues of bias and credibility, especially where, as here, **Wagner and**

---

[3] Indeed, a simple search for "City of Chicago" and "code of silence" reveals over a dozen cases allowing § 1983 plaintiffs to introduce evidence of a cover-up or of officers' bias toward each other.

**his partner had direct contact and conversations with (among others) the individuals whose post-shooting conduct and violation of police procedure is the very case-specific cover-up evidence Willis sought to introduce**. Finally, requiring Willis to introduce direct testimony of an admission of wrongdoing by Wagner to another CPD officer in effect nullifies the need to present case-specific cover-up evidence because the jury would have direct evidence of Wagner's guilt. Indeed, based on the Court's ruling, such evidence would still be insufficient to open the door to establishing cover-up evidence concerning other individuals whom Willis could not link to Wagner's admission of wrongdoing.

Instead, these other individuals' knowledge of the wrongdoing and decision to engage in a cover-up in favor of Wagner could be inferred from the specific circumstances in question as more fully described in Plaintiff's Statement, including without limitation those noted below:

- Triantafillo "recovered" Willis' gun by picking it up with his bare hands without wearing rubber gloves, and then putting the gun in his waistband and walking around the scene with the gun in his waistband for over 20 minutes.

- As a result of how Triantafillo "recovered" the gun, there are no photos of the gun in the spot where Triantafillo recovered it, but only Wagner and Triantafillo's statements that the gun flew out of Willis' hand after he was shot, hit a chain link fence and then fell in the front yard at 851 North Keystone.

- Wagner spoke with Sergeant Carl Interrante and detectives including Detective David March at the scene shortly after the shooting, gave an oral statement to Detective March and did a "walk-through" from his vehicle to where the shooting occurred with Detective March. Interrante and March were aware of Triantafillo's (mis)handling of the gun. They expressed no concern with Triantafillo's failure to preserve such evidence at the crime scene. Interrante and March were also aware of the absence of any crime scene photos of the spot where the gun was recovered and any analysis of the bullet's trajectory.

- Sergeant Interrante and/or Detective March were present when Wagner filled out their Tactical Response Reports and Officer's Battery Reports. Those Officer's Battery Reports include a section entitled, **"Unusual Circumstances Regarding Officer Control Tactics and Safety: (if you need more space use additional sheets)."** Neither Wagner nor Triantafillo included any narrative in that section.

7

- After Willis was shot and was lying on the sidewalk, various police officers surrounded him and shined flashlights in his face, leading Willis to think they did not want him to see what they were doing down by his waist.

- Triantafillo did not knock on the door or speak to anyone at 839 North Keystone and did not perform any further efforts to investigate the whereabouts of the actual or potential eyewitnesses that he and Wagner placed at the scene at the time of the shooting, although only Wagner and Triantafillo could identify these purported actual or potential eyewitnesses.

- The detectives (including lead investigator Detective David March) and the police officers (Officers Coleman and Granado) who arrived at the scene directed and/or performed a canvass of the area, but were unable to locate and obtain statements from these purported actual or potential eyewitnesses.

- During his "walk through," Triantafillo had the opportunity to pick up the trash bag that Willis dropped and put it in a trash can at the rear of the gangway.

- After Detective Chris Matias accompanied Willis in the ambulance to Mt. Sinai Hospital, he inspected an evidence bag containing Willis' clothing at the hospital. Matias did not have on his person a camera to take any pictures of that clothing and knew that the clothing would be processed by the crime lab once it received the evidence bag. Nevertheless, Matias apparently thought it was very important to inspect Willis' clothing at the hospital and so he did. He looked and determined where the bullet would have entered. After Matias inspected Willis' clothing at the hospital and determined where the bullet would have entered, he had a conversation with Detective March, the lead investigator, about his findings.

- Detective Matias' findings as to the bullet trajectory were inconsistent with Wagner's statement to Detective March at the scene shortly after the shooting that Willis turned to his left and pointed a gun at Wagner and then spun back around facing northbound after being shot by Wagner.

- When Wagner was arresting Willis, he "patted him down." When Detective Matias inspected Willis' clothing at Mt. Sinai Hospital, he "discovered" bullets in the front right pocket of Willis' jeans, and that he took those bullets out, looked at them and then put them back in Willis' pocket. Willis told him those were not his bullets and he did not know how they got in his pocket.

- March did not request a forensic analysis of the bullet trajectory or fingerprint analysis of the bullets purportedly found in Willis' pocket.

- The Roundtable reached its conclusion regarding the shooting without mention of Triantafillo's conduct or Detective Matias' findings as to the bullet trajectory.

8

From all of this evidence and more as set forth in Plaintiff's Statement, the jury could reasonably have inferred that the other individuals' efforts to help protect Wagner bore directly on Wagner's subjective belief that he had done something wrong in shooting Willis.

The jury could reasonably have inferred from <u>circumstantial evidence</u> that Wagner implicitly asked these CPD officers and personnel to engage in some type of cover-up. Moreover, since Wagner and Triantafillo had contact with the other CPD officers involved in the post-shooting investigation, the jury could infer from that contact that Wagner did make some admission of wrongdoing, and the inadequate post-shooting investigation evinces knowledge of that admission. Indeed, the jury could reasonably have inferred that these officers engaged in some type of cover-up on their own behest regardless of whether Wagner asked them to do so, because they were biased in his favor. Such conduct would not be evidence of CPD's alleged <u>general</u> culture of excessive force. Rather, it would be evidence of an incident specific cover-up by police officers involved with the incident of another police officer's wrongdoing.

The Court gave the jury the following instruction about the phrases "direct evidence" and "circumstantial evidence" and the weight to be accorded to same:

> You may have heard the phrases "direct evidence" and "circumstantial evidence." Direct evidence is proof that does not require an inference, such as the testimony of someone who claims to have personal knowledge of a fact. Circumstantial evidence is proof of a fact, or a series of facts, that tends to show that some other fact is true. As an example, direct evidence that it is raining is testimony from a witness who says, "I was outside a minute ago and I saw it raining." Circumstantial evidence that it is raining is the observation of someone entering a room carrying a wet umbrella. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. You should decide how much weight to give to any evidence. In reaching your verdict, you should consider all the evidence in the case, including the circumstantial evidence. (Dkt. 164-1 at 8.)

Nevertheless, in its Order of August 26, 2014, the Court ruled that:

> In order for those other individuals' actions to be relevant to Wagner's alleged use of excessive force, Willis would need to have identified some additional link between Wagner's misconduct and these other individual's knowledge of it. Without having seen the shooting, and without evidence that Wagner admitted wrongdoing to them or asked them to engage in some type of cover-up, their conduct can only be evidence of CPD's alleged general culture of excessive force – a theory of relevancy which the Court has already rejected (there is no Monell claim in this case). (Dkt. 151 at 1.)

Therefore, on the issue of "some additional link", circumstantial evidence was not acceptable. The Court held in effect that it could only be proved by direct evidence, i.e., some kind of inculpatory document or testimony that would be highly unlikely to exist (after all, no cover-up would be in effective it if let that type of evidence see the light of day). In short, the Court imposed an unwarranted and unrealistic burden on Willis' ability to present material cover-up evidence. A § 1983 plaintiff need not make such a direct showing to be able to offer evidence of an incident specific cover-up by Defendant and other CPD officers and personnel.

Accordingly, all of Willis' cover-up evidence should have been admitted and the Court's limitation of it to that of Wagner and Triantafillo alone (excluding Triantafillo's handling of the gun) severely hindered Willis' ability to present a coherent and palpable pattern of cover-up that would give rise to an inference of wrongdoing by Wagner. Thus, Willis was denied a fair trial.[4]

---

[4] With respect to Triantafillo's handling of the gun, the Court said at the conference that, "so they recover the gun, okay, and remember, in this scenario your client is bound by the finding that the gun was his and not planted. All right? So now they have recovered the gun. And at this point, it just does not matter whether Willis' fingerprints are on the gun because they have recovered it from him. And the gloves and fingerprints does not matter at all as to the pointing of the gun by Mr. Willis." (Dkt. 153, Trial Tr. at 6:13-20.) However, the issue is not whether Willis' fingerprints were on the gun; the issue is whether Triantafillo thought Willis' fingerprints were on the gun and what that shows as to his and Wagner's consciousness of guilt "as to the pointing of the gun by Mr. Willis." In addition, the Court's exclusion of evidence relating to Triantafillo's recovery of the gun runs contrary to the Court's ruling regarding a "dividing line" of allowable evidence. This evidence should have been allowed because Triantafillo is on the right side of the dividing line because he "was a participant in the chase and saw the shooting." (Dkt. 151 at 1.)

B. **The Court Erroneously Limited Clark's Expert Testimony**

1. **Clark Opinion No. 3: Wagner and Triantafillo committed so many gross violations of proper police procedure as to create reasonable grounds to believe that they engaged in a cover-up.**

In its Order of August 14, 2014, the Court ruled that this opinion should be barred as to Wagner and Triantafillo's pre-shooting conduct. The Court ruled that, "[c]onduct that took place before the shooting even occurred is highly unlikely to constitute evidence of a post-shooting cover-up, and is so unlikely that it is mere speculation." (Dkt. 138 at 3.) However, for the reasons stated in Willis' Memorandum of Law in Opposition to Wagner's Motion to Bar Expert Roger A. Clark (Dkt. 125), that ruling respectfully misses the point of Clark's opinion and bases therefor, which explain how Wagner and Triantafillo's pre-shooting conduct evidences a reckless disregard for proper police procedure that led to a shooting – the circumstances of which they and other CPD officers and personnel subsequently endeavored to obfuscate. Clark's experience and expertise in law enforcement would have aided the jury in understanding how Wagner and Triantafillo created a situation fraught with risk that one or both of them would shoot someone (such as Willis) when deadly force was not necessary or appropriate.

The Court stated that the officers' post-shooting conduct, on the other hand, could be relevant to support Willis' theory that Wagner and Triantafillo attempted to cover-up for Wagner's misconduct. (Dkt. 138 at 3.) However, by limiting the potential scope of Clark's opinion to the post-shooting conduct of only Wagner and Triantafillo (excluding Triantafillo's handling of the gun), the Court precluded Willis from showing that that conduct was part of a larger cover-up of Wagner's wrongdoing in this particular case by not only Wagner and Triantafillo, but other CPD officers and personnel as well. This was clear and prejudicial error.

For these reasons, the Court should not have limited Clark's Opinion No. 3.

11

> 2. **Clark Opinion No. 4: The Chicago Police Department created and fostered a culture where officers believe they can act with impunity and go unpunished.**

In its Order of August 14, 2014, the Court excluded this opinion. (Dkt. 138 at 3-4.) However, as noted in Willis' Response to Defendant's Motion in Limine No. 3, testimony about Wagner's bias and cover-up efforts is also relevant for the reasons explained previously in Willis' Memorandum of Law in Opposition to Defendant's Motion to Bar Expert Opinions of Clark. (See Dkt. 125 at 14.) That is Clark would have opined that the CPD has fostered a culture where "officers believe they can act with impunity and go unpunished." (Id.) Such testimony is relevant because it can influence an officer's propensity to use lethal force, and also bears on punitive damages. When considering a similar issue, Judge Shadur specifically held that testimony about defendants' perceived impunity was relevant to the issue of punitive damages (even in the absence of a Monell claim of liability against the City). See Memorandum Opinion and Order at 17-18, Padilla v. City of Chicago, No. 1:06-CV-05462 (N.D. Ill. Dec. 3, 2013), ECF No. 677. The Court should have done the same here.

For these reasons, the Court should not have excluded Clark's Opinion No. 4.

> 3. **Clark Opinion No. 5: Other shell casings were recovered at the crime scene and Willis' gun was inoperable as received.**

The Court agreed with Wagner's motion to bar Clark's opinions regarding other shell casings recovered at the crime scene and the fact that Willis' gun was inoperable, contending that these opinions are irrelevant and not helpful to the jury. The Court held that, "[on] the shell casings, there presence at the scene is irrelevant, even to the purported cover-up theory (whatever the theory's formulation)." (Dkt. 138 at 4.) As to the gun's inoperability, the Court held that "Clark is not needed to opine on the gun's inoperability, and he has no genuinely expert opinion to offer on whether someone would point an inoperable gun." (Id.)

12

The Court's ruling on the shell casings respectfully misses the point that the failure of the CPD officers to investigate the shell casings is further evidence that these individuals were conducting an inadequate investigation of what occurred in order not to create any issues that could contradict the story propounded by Wagner and Triantafillo as to the events leading up to the shooting of Willis. The Court's ruling regarding the gun's inoperability and Clark's inability to offer a genuinely expert opinion on whether someone would point an inoperable gun fails to take into account Clark's 27½ years of experience with law enforcement, including situations when individuals have and have not pointed a gun at an officer.

For these reasons the Court should not have excluded Clark's Opinion No. 5.

### III. THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

The jury verdict in favor of Wagner ignored the undisputed facts that:

1. The bullet trajectory was rear to front, indicating that when Willis was shot he was facing away from Wagner.[5]

2. Wagner testified (and physically demonstrated) that while Willis was running northbound on the sidewalk, he slowed down, turned to his left, pointed a gun with his right hand over his left shoulder causing Wagner to fire his weapon at Willis and then spun back around facing northbound as a result of being shot.

The clear inconsistency between the bullet trajectory and Wagner's version of the events showed that Wagner was lying about what happened.[6] Clark testified without contradiction that the actual graze wound suffered by Willis is inconsistent with Wagner's demonstration of Willis' alleged movements at the time he was shot, i.e., Willis must have been facing away from Wagner

---

[5] The bullet trajectory became "undisputed" after the Court denied Defendant's Daubert motion to bar Clark's expert testimony as to such trajectory. (Dkt. 138 at 3.)

[6] Wagner gave that version of the events to Detective March at the scene shortly after the shooting (Dkt. 180, Trial Tr. at 240:5-241:9), testified to it during his deposition in this case (id. at 231:6-232:25), and testified to it during the trial of this case (id. at 231:6-19; 232:4-234:20, 282:14-17; 315:6-316:17.). Triantafillo gave similar testimony. (Dkt.181, Trial Tr. at 342:16-345:11; 381:24-382:3.)

13

at the time he was shot. Defense counsel's attempted effort during Clark's cross examination to demonstrate consistency ignored Wagner's repeated testimony as to such maneuvers. Indeed, her demonstration was <u>not</u> evidence and <u>in</u> <u>fact</u> contradicted Wagner's testimony otherwise. The clear weight of the evidence should have resulted in a verdict in favor of Willis.

     During Wagner's cross examination by defense counsel, Wagner adhered to his demonstration of Willis' alleged maneuvers, but testified that he never meant his demonstration to be an exact replica of how Willis' left hip was [positioned]. (Dkt. 180, Trial Tr. at 298:16-18.). Among other things, Wagner testified that when he performed the video tape demonstration he was standing, stationery, whereas on the sidewalk on September 22, 2006, Willis was running at the time, he pointed his weapon at Wagner. However, on redirect examination by plaintiff's counsel, Wagner acknowledged that he actually demonstrated Willis' alleged movement twice during his deposition on April 1, 2013, and that the second time he demonstrated it he simulated how Willis turned when he was running. (Id. at 315:6-316:17.) That second video clip, which was played to the jury and admitted into evidence, clearly showed (as Wagner acknowledged) when he performed the motion that he observed Willis to perform, his left hip was turned to the left and directly facing south. (Id. at 316:6-17.) The manifest weight of the evidence, including but not limited to that second video tape demonstration, showed without question that Willis would not have received the wound he did if he had made the alleged turning movement demonstrated by Wagner. Although Wagner made an effort to explain this inconsistency by his testimony that he did not know how Willis' hips were pointed at the time of the shooting and his testimony that he did not intend his demonstration to be an exact replica of how Willis' left hip was positioned, that testimony was plainly contradicted by the physical evidence of Willis' wound and the prior statements and physical demonstration by the party opponent, Wagner.

In contrast, Willis' account of the events was unchanging. He testified (as he had during his deposition) that, before he was shot from behind, he never slowed down, never turned and never pointed a gun at anyone. (Dkt.179, Trial Tr. at 157:20-158:9.)

For these reasons, the Court should conclude that "another outcome is obviously correct and the verdict is clearly unsupported by the evidence" ( supra, p. 4) and grant Willis a new trial.

## CONCLUSION

WHEREFORE, for the reasons stated above, Plaintiff Antione L. Willis respectfully requests that this Court grant this Motion For New Trial and such other relief as is just.

Dated:  October 7, 2014                    Respectfully submitted,

ANTIONE L. WILLIS

By: /s/ David M. Allen
David M. Allen (#0032239)
Rachel T. Nguyen (#6270349)
E. Jason Burke (#6295997)
FAEGRE BAKER DANIELS LLP
311 South Wacker Drive, Suite 4400
Chicago, Illinois  60606
Telephone:  (312) 212-6500
Facsimile:  (312) 212-6501
Email:  david.allen@faegrebd.com
Email:  rachel.nguyen@faegrebd.com
Email:  jason.burke@faegrebd.com

US.54946161